IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 10 CR 763 |
| v. | ) | Judge Ruben Castillo |
| | ) | |
| VERDELL SIMMONS | ) | |

## NOTICE OF FILING

TO:    Dylan Smith
        Assistant United States Attorney
        219 S. Dearborn Street, 5th Floor
        Chicago, IL 60604

Please take notice that on this 22nd day of December, 2010, the undersigned filed the following document(s) in the above-captioned cause, a copy of which is attached hereto.

- **MR. SIMMONS' MOTION TO SUPPRESS EVIDENCE**

                                                  FEDERAL DEFENDER PROGRAM
                                                  Carol A. Brook
                                                  Executive Director

                                                  By:   *s/ Beth W. Gaus*
                                                           Beth W. Gaus

BETH W. GAUS
FEDERAL DEFENDER PROGRAM
55 E. Monroe Street, Suite 2800
Chicago, IL 60603
(312) 621-8342

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 10 cr 763 |
| v. | ) | Judge Ruben Castillo |
| | ) | |
| VERDELL SIMMONS | ) | |

**MR. SIMMONS' MOTION TO SUPPRESS EVIDENCE**

VERDELL SIMMONS, by the Federal Defender Program and its attorney, BETH W. GAUS, requests that this Court enter an order suppressing all evidence that was seized as a result of the search of 604 North Trumbull, Chicago, and Mr. Simmons on January 13, 2010. This motion is filed pursuant to <u>Illinois v. Gates</u>, 462 U.S. 213 (1983); <u>United States v. Leon</u>, 468 U.S. 897 (1984); and <u>Franks v. Delaware</u>, 438 U.S. 154 (1978). As will be explained below, the application for and issuance of the search warrant underlying that search violated Mr. Simmons' rights under the Fourth and Fourteenth Amendments.

To summarize, the complaint submitted by a Chicago Police Department ("CPD") officer in support of the search warrant did not on its face contain sufficient information to establish probable cause. This is because the complaint was based on the claims of a first-time informant of unknown reliability and contained insufficient corroboration of that CI's claims. Furthermore, given the legal pronouncements established by our Circuit prior to the issuance of the search warrant and the information that cut against the informant's reliability that the CPD officer omitted from the complaint, reliance by the CPD officer on the Judge's issuance of the warrant was not objectively reasonable – therefore, the "good faith exception" should not apply in this

2

case.

## Factual Background

Mr. Simmons is charged with one count of being a felon in possession of firearms, 18 U.S.C. §922(g)(1). The search at issue in this motion was executed by CPD officers on January 13, 2010 at 604 North Trumbull in Chicago. The search was executed pursuant to a warrant issued on that same day by Cook County Circuit Court Judge #1906 (the judge's name on the search warrant cannot be made out). (Exhibit A, search warrant.)[1] The search warrant was authorized based upon a complaint submitted by CPD Officer John Murphy. (Exhibit B, complaint.) As a result of the search, CPD officers reported that they seized two guns, ammunition, suspected drugs, money, Mr. Simmons' Illinois ID card, clothing, and keys. The CPD officers reported that they found the guns in a suitcase in a rear utility closet. After the search, CPD officers arrested Mr. Simmons and a woman who lived at that address.

The sole source of the allegations contained in the complaint came from a person who was a first time, confidential informant ("CI"), and who was questioned by CPD officers shortly after his own arrest on January 12, 2010. (Exhibit B, complaint.) According to the complaint, the CI claimed during a "conversation" with Officer Murphy (the complaint does not disclose that this was immediately following the CI's arrest) that "as recently as 10 Jan 10, [the CI] went to 604 N. Trumbull 1st floor apartment of a brick two flat building to visit with Verdell Simmons. [The CI] is an acquaintance of Verdell Simmons. . . . during this visit [with] Verdell Simmons [the CI] observed Verdell Simmons reach beneath a couch in the front room of the apartment, retrieve a

---

[1] So as not to file discovery as part of the public record, the exhibits referenced herein will be sent to your Honor's chambers for review, with copies sent to the government, as well.

3

blue steel semi-automatic handgun and place the weapon in his waistband. . . . Verdell Simmons told [the CI] that he is at war with traveling vice lords from Chicago and Trumbull and he has the weapon with him in case the travelers come to his house and start a war." (Exhibit B, complaint.) It is worth noting that the guns the CPD officers reported finding during the subsequent search were not found anywhere near the couch in the front room of the apartment. It is further worth noting that the CI did not incriminate himself by providing this information.

The complaint omitted several key pieces of information. There was no information in the complaint explaining how well the CI allegedly knew Mr. Simmons, nor about the nature of the CI's alleged relationship (either positive or negative) with Mr. Simmons. The complaint did not include the CI's criminal history nor his gang affiliation,[2] both of which could have shed light on the CI's level of reliability. The defense does not have a copy of the CI's rap sheet (the defense requested it; the government declined to disclose it), but the government has represented that the CI has used aliases in connection with previous arrests, and that the CI has multiple arrests and convictions, including convictions for unlawful possession of a weapon by a felon, aggravated unlawful use of a weapon, possession of a controlled substance, and solicitation of unlawful business.

Perhaps even more problematically, the complaint did not include even a blanket assertion that the CI was reliable. Indeed, the CPD officers had never worked with or even met this CI before, and there is no indication that they knew whether or not the CI had ever provided reliable,

---

[2] The government has represented that CPD records currently reflect that the CI has a reported gang affiliation, but that as of the time that Officer Murphy applied for the search warrant, he was not aware that the CI had any gang affiliation. The defense does not know whether or not Officer Murphy checked CPD records for any reported gang affiliation for the CI before he applied for the search warrant.

4

accurate information in the past. (Exhibit C, 302s of CPD officers.) Moreover, the complaint contained no independently collected evidence that could have supported a conclusion that this informant was telling the truth about his alleged meeting(s) with Mr. Simmons (e.g., surveillance information, other witness interviews, etc.).

 As noted above, the CI made these claims about Mr. Simmons shortly after being arrested on January 12, 2010 for solicitation of unlawful business (apparently for trying to sell "blow," or heroin). (Exhibit D, redacted arrest report of CI provided by government.) A subsequent interview of Officer Murphy by federal agents revealed that during the officers' questioning of the CI following this arrest, the CI "did appear to believe that Murphy and his partner were holding the drugs over his/her head." (Exhibit C, 302 of Officer Murphy, at 430.) Officer Murphy also represented that although he took notes while debriefing the CI, he discarded them once the search warrant was completed. (Id.) Officer Murphy also reported that "at some point, he drove past the suspected drug house located at 604 N. Trumbull with the person/informant in the back seat of his police vehicle." (Id. at 430-31.) Notably, the complaint for the search warrant represented that a different officer (McGrory) drove the CI past the address. (Exhibit B, complaint.)

 The complaint also did not include any physical description of Mr. Simmons as provided by the CI. Rather, the complaint provides that CPD officers showed the CI a single photo of the residence at the address the CI identified to have him confirm it, thereafter drove the CI by that same house to have him identify it, and showed photos to the CI of only Mr. Simmons for the CI to identify him. (Exhibit B, complaint.) There is no indication that any photo arrays were presented to the CI for him to corroborate his information by choosing among various photos. (Id.)

5

In a subsequent interview by federal agents (Exhibit C (at 432), 302 of Officer Murphy), Officer Murphy could not recall the Cook County Judge's name who signed his complaint for a search warrant. Officer Murphy recalled the Judge's name in another interview later only after an ATF agent read off a couple of names of Cook County Circuit Court judges. (Id.) During this later interview, Officer Murphy then "recalled the judge swearing him and his informant in on the date of his warrant. He recalled the judge asking him and his informant multiple questions concerning their knowledge of the target, the target location, and the time frame that the informant either observed or participated in activities at the target location." (Id.)

The government has declined to provide the CI's name, address, gang affiliation, a copy of his rap sheet, or an unredacted copy of his arrest report (the defense requested all of these in discovery), so the defense has been unable to attempt to do its own investigation of this CI and his level of reliability.

**Argument**

I. <u>There was no probable cause to support the issuance of the search warrant.</u>

The Fourth Amendment provides that warrants may issue, but only upon probable cause supported by oath or affirmation. U.S. Const. Amend. IV. Probable cause to issue a search warrant is found by looking at the "totality of the circumstances." See Illinois v. Gates, 462 U.S. 213, 238 (1983); United States v. Koerth, 312 F.3d 862, 866 (7th Cir. 2002). The duty of this Court in reviewing the issuance of a search warrant is to ensure that the issuing judge was provided with a substantial basis for concluding that probable cause existed. <u>See Gates,</u> 462 U.S. at 238-39; Koerth, 312 F.3d at 866.

6

When the basis for a search warrant is claims made by a CI, as it was here, the issuing judge should consider the informant's veracity, reliability, and basis of knowledge. See Gates, 462 U.S. at 233; United States v. Bell, 585 F.3d 1045, 1049 (7th Cir. 2009). Some of the factors to be considered are: (1) the extent to which police corroborated the informant's claims; (2) the degree to which the informant acquired knowledge of the events through first-hand observation; (3) the amount of detail provided; (4) the interval between the date of the events and the police officer's application for the search warrant; and (5) whether the informant personally appeared and testified before the issuing judge. See Bell, 585 F.3d at 1049.

In some cases, informants of unknown reliability *can* establish probable cause, but there should be independent police corroboration too. See Gates, 462 U.S. at 238-42; Koerth, 312 F.3d at 867-68. That is the main problem in this case – there was insufficient corroboration of the claims of a first-time informant of unknown reliability. The complaint does not include information that could have adequately corroborated the information supplied by this first time CI of wholly unknown reliability. Indeed, the complaint did not include even a blanket assertion that the CI was reliable – although such an assertion absent any supporting evidence would still have been insufficient, see Koerth, 312 F.3d at 867 – nor could it have because the CPD officers had never worked with or even met this CI before, and there is no indication that they knew whether or not the CI had ever provided reliable, accurate information in the past. Troublingly, the complaint did not even inform the issuing judge that this CI was a first-time informant of unknown reliability.

Rather, the complaint actually omitted several key pieces of information that could have shed light on the CI's reliability: his criminal history, any gang affiliation, and the fact that the CI

had made these claims about Mr. Simmons immediately after being arrested and believing, in Officer Murphy's view, that "Murphy and his partner were holding the drugs over his/her head." Once again, the complaint failed to inform the issuing judge of these critical pieces of information necessary to thoroughly inquire into the CI's reliability.

      The fact that the CI provided an address where Mr. Simmons could be found lends nothing useful to the determination of probable cause because (a) that information would have been apparent to anyone who lived in the neighborhood, and (b) it does not in any case corroborate the CI's claims that Mr. Simmons had possessed a gun at that address.

      Similarly, the CPD officer's attempts at corroboration through photo identification were insufficient because the officer did not present any photo arrays to the CI to corroborate his information by choosing among various photos. Presenting photos of only the target address and defendant is overly suggestive and therefore provided no corroboration at all. This is especially problematic where, as here, the complaint did not allege that the CI first provided a description of Mr. Simmons or the address, which the CPD officer could corroborate thereafter through photos.

      Likewise, although it appears that the CI appeared before the issuing Judge, we do not know the specifics of what was inquired into that could establish the CI's knowledge and veracity in light of his lack of a reliable track record. This is underscored by the fact that Officer Murphy "recalled" some specifics of the CI's appearance before the issuing judge only after a subsequent interview by an ATF agent. And who knows if the issuing judge would have asked different or more questions if the complaint had informed him of the missing information identified above. In any case, a CI's appearance in front of the issuing judge will not save an otherwise insufficient warrant. See United States v. Peck, 317 F.3d 754, 756-57 (7th Cir. 2003) (CI claimed she had

been in defendant's home two days earlier and was shown drugs and personally appeared before the judge who issued the warrant, but the CI had not provided sufficient details and there was insufficient police corroboration of CI's claims; court held that probable cause for the warrant did not exist (although ultimately upheld it based on the good faith exception)).

The insufficiently-corroborated complaint in this case cannot be relied upon as an adequate protection of Mr. Simmons' right to be free from unreasonable searches and seizures. The search warrant and the complaint are both based on the original information provided by the CI. If the information provided by the CI fails because of the lack of reliability or credibility, so too must the complaint and resulting search. In short, the complaint in this case did not provide to the issuing judge the required probable cause to issue the search warrant. See, e.g., Bell, 585 F.3d at 1048-51 (warrant was not supported by probable cause where affidavit failed to provide information to establish reliability of informant, and police did not sufficiently corroborate informant's reports; court ultimately upheld search based on good faith exception only because affidavit also cited corroborating statements from other informants); Peck, 317 F.3d at 756-57 (profiled above); Koerth, 312 F.3d at 867-70 (previously unknown informant stated that he saw drugs at defendant's residence and had purchased from the defendant in the past; the court found (and the government agreed) that the affidavit lacked an adequate factual foundation in part because the police did not take sufficient steps to corroborate the informant's statements; court ultimately applied the good faith exception because, at the time, the court could not point to any case previously holding that a materially similar affidavit based on conclusory statements from a named (as opposed to anonymous) informant failed to establish probable cause).

II.   The "good faith exception" should not apply in this case.

Having nevertheless obtained the search warrant from the issuing judge, the inquiry shifts to whether the CPD officer relied on the warrant in good faith. Under the good faith exception to the exclusionary rule, courts will not suppress evidence when a police officer relies in objective good faith on a faulty but facially valid search warrant. See United States v. Leon, 468 U.S. 897, 926 (1984). The "good faith exception" does not apply, however (and therefore the evidence should be suppressed), if, as applicable here: (1) courts have clearly held that a materially similar affidavit previously failed to establish probable cause under indistinguishable facts; (2) the affidavit is so plainly deficient that any reasonably well-trained officer would know that probable cause was lacking; or (3) the officer was dishonest or reckless in preparing the affidavit. See Bell, 585 F.3d 1052; Koerth, 312 F.3d at 869.

The facts of this case show that the good faith exception should not apply here. Most troublingly, Officer Murphy chose not to include in the complaint facts that were known to the officer and that were critical to a thorough inquiry into the CI's reliability and veracity, as outlined above. This suggests bad faith, and these omissions by Officer Murphy should not be overlooked.

Furthermore, at the time that Officer Murphy applied for the search warrant, police officers in this Circuit were on notice of the legal precedents cited above and materially similar to this case (Peck; Bell; Koerth, etc.). The government will likely try to distinguish these cases, citing to varying details, but the overriding point is that law enforcement officers must be held accountable for the body of law that our Circuit has established. See Bell, 585 F.3d at 1052 ("police officers are 'charged with a knowledge of well-established legal principles as well as an ability to apply the facts of a particular situation to these principles' . . . . 'if a local drug task force

routinely works with the federal government, it has a responsibility to learn and follow applicable legal precedent.'" (internal citations omitted).)

### Requests for Relief

For the foregoing reasons, Mr. Simmons respectfully requests that this Court enter an order suppressing all evidence that was seized as a result of the search of 604 North Trumbull, Chicago, and Mr. Simmons on January 13, 2010, and any fruits of that search (including any subsequent statements by Mr. Simmons). Alternatively, the defense requests that this Court grant the defense access to the discovery identified herein that the defense requested but the government has declined to disclose (the CI's name, address, gang affiliation, a copy of his rap sheet, and an unredacted copy of his arrest report). To the extent that the government contests the factual assertions herein, or there are facts to which the defense does not have access but would bear on this Court's determination (including this Court's evaluation of the credibility of Officer Murphy), Mr. Simmons requests an evidentiary hearing to ascertain these factual matters.

        Respectfully submitted,
        FEDERAL DEFENDER PROGRAM
        Carol A. Brook,
        Executive Director


By: /s/ Beth W. Gaus


BETH W. GAUS
FEDERAL DEFENDER PROGRAM
55 E. Monroe, Suite 2800
Chicago, IL 60603
(312) 621-8342

11

## CERTIFICATE OF SERVICE

The undersigned, Beth W. Gaus , an attorney with the Federal Defender Program hereby certifies that in accordance with FED.R.CRIM. P. 49, FED. R. CIV. P5, LR5.5, and the General Order on Electronic Case Filing (ECF), the following document(s):

**MR. SIMMONS' MOTION TO SUPPRESS EVIDENCE**

was served pursuant to the district court's ECF system as to ECF filings, if any, and were sent by first-class mail/hand delivery on December 22, 2010, to counsel/parties that are non-ECF filers.

By: s/*Beth W. Gaus*
Beth W. Gaus
FEDERAL DEFENDER PROGRAM
55 E. Monroe St., Suite 2800
Chicago, Illinois 60603
(312) 621-8342